Our second case is 24-19-59, David Gasper v. EIDP, Inc., et al. And representing Mr. Gasper is Mr. Tyson. Yes, Your Honor. Good morning. Good morning. We'll give you a second to get set up and then we'll be ready to start. Thank you. Yes, sir. Good morning, Your Honors. May it please the Court, my name is Brian Tyson with the law firm of Marcelino & Tyson, and I am here today representing the appellant, David Gasper, who is here in the courtroom with us. I wanted to start out and just briefly tell you what I think the case is all about and then give you a little road map for what I wanted to talk about today. The overarching question in this case is whether a plan administrator of an ERISA plan may rewrite a state court judge's order that was lawfully written, lawfully entered, and represents the bargain for contract between two parties to a divorce. Now, there's three parts to this I wanted to talk to you about, and Your Honors had asked us to talk about Fox v. Fox, so that's the first thing I wanted to talk about with respect to the standard of review for a plan administrator's review of a DRO or a domestic relations order. Second, I wanted to talk about the methodology that the district court used to interpret North Carolina, under North Carolina law, to interpret a contract and that the district court erred in that regard. And then third, I wanted to talk about the legal error that the district court committed by excluding David's declaration with respect to the statutory penalties claim under ERISA, wrongfully believing that an administrative process was required under ERISA with respect to that statutory claim. So the first issue I wanted to talk about that Your Honors had asked us to address is the Fox v. Fox case, and specifically the correct standard of review for a plan administrator's review of a DRO, the domestic relations order. The district court did correctly hold that that standard of review is a de novo standard. The Fox case actually does not address that question. In Fox, what happened was the participant had gotten a DRO, an order from the Maryland Family Court. She took that to the plan administrator, who actually happened to be her ex-husband, and presented that DRO to the plan administrator. The plan administrator said, yes, this is a qualified domestic relations order. I will pay you. The Maryland Family Court then went back and said, wait a minute, we miscalculated. We got the wrong amount. You're actually due more money, participant. So the participant then took the subsequent family court order, goes back to the plan administrator the second time, and says, oh, they made a mistake. I need more money, and you're supposed to pay me out from this. The plan administrator said, no, I'm not going to do that. The reason being is that I think that it's only that the words lump sum within the plan. In other words, the plan administrator was interpreting the plan in that case. I think lump sum only means one payment. You're asking me to make a second payment. I'm not going to do it. And so then the district court, as well as this court, looked at the plan administrator's review of the plan term lump sum. It wasn't looking at the quadro language. It was only looking at the plan interpretation. So the quadro issue didn't really even come up in that case. Again, the correct standard is a de novo standard, and the reason is that in the U.S. Supreme Court's Firestone case, where it said that a plan administrator may be given by the plan an abuse of discretion standard, the reasoning for that, as this court has said as well, is because the plan administrator has some special abilities to interpret the plan, is used to dealing with the plan language. You want a consistent interpretation of the plan document, so therefore an abuse of discretion standard could be given in that case. On the other hand, when we're looking at a dro, the domestic relations order, that's a state court judge's order. The plan administrator has no special powers or no special abilities with respect to interpreting those, and that's what the district court here said, and it cited the Fifth Circuit's Matasarin case, which held as well, and then the other cases that we cited in our brief, there's a trio of cases from the Third Circuit, Matthews, Hullett, and then Gruber. Those all held the same thing, and then there's an Eighth Circuit case. This wasn't in our briefs. I just found it when we were doing our research to prepare for argument, but it's Hogan v. Raytheon. So to my knowledge, all the circuit courts that have looked at this have said yes, because the Firestone case deals with plan interpretation, not a dro interpretation. There is no reason to defer to the plan administrator. Rather, it needs to be a de novo standard. So you're saying that the standard review is split with respect to the ERISA, the interpretation of the plan. ERISA tells us there's discretion, therefore we review under an abusive discretion standard, and with respect to the question of the interpretation of the quadro itself, we review de novo. Yes, that's correct, Your Honor. Thank you. Yes. And so I don't think the Fox case kind of really addresses the specific issue here, but it does dovetail nicely, because turning to the second issue that I wanted to talk to the court about, which is the district court's review of the dro and the error it made in not applying North Carolina interpretive methodology for a contract. In this case, the plan administrator didn't interpret it. It decided just to rewrite the order for the judge. The plan administrator is not allowed to do that. Now, if you go back to Fox, you see what actually should have happened. In Fox, the second time that the participant came back to the plan administrator, the plan administrator said, I'm not going to qualify that. I am stamping it as not qualified. That's what a plan administrator does with respect to a dro that's presented. It either is a quadro or it's not a quadro. If it's a quadro, meaning it meets the requirements under ERISA to be a quadro, including that it does not require any type of benefit or form of benefit, not otherwise provided by the plan, or that it does not comply with the plan in some other way, then the plan administrator says, yes, it's a quadro, stamps it. That's what happened here. They stamped it and said, this is a quadro. It's good. There is no contradiction here. Is that because it gives the plan administrator discretion because it uses the word may as necessary? Okay. That gets into the actual language of and the interpretation of that quadro, which we are saying is a de novo standard of review. So, again, the plan administrator does not have any authority to rewrite that order. But looking at the interpretation of that language, here's, and I wanted to quote this for the court, here's what the language says. The alternate payee's benefit may be reduced as necessary to cover the cost. Can you tell us what paragraph you're in? Are you in paragraph four? I'm quoting from joint appendix 824. That was the page.  So paragraph 13. I believe that's correct, Your Honor. It says the alternate payee's, and that's David's ex-spouse, benefit may be reduced as necessary to cover the cost of the QJSA awarded to the alternate payee. And so then the question is, yes, what does that language mean? And as Your Honor is asking, well, it says may. How should that be interpreted? And so under this, ERISA does not preempt state law. ERISA, as Your Honor is aware, has a very broad preemptive effect, but it specifically does not preempt state law. Rather, in interpreting quadros, the court uses the law of the state where the quadro was entered. That's because here it was a North Carolina judge entering a North Carolina order with respect to a North Carolina family law case involving North Carolina parties. Family law is traditionally an area where state law has applied and where federal law would not apply. That's why ERISA exempted it from any type of preemptive activity. So here the court should have used North Carolina interpretive methodologies to determine what a contract means. Unfortunately, the district court did not do that. It simply looked at the word and said, well, I think it might be permissive, and so I'm going to uphold the determination of the plan administrator and decide that it can be permissive. That doesn't work under North Carolina law. North Carolina law says to interpret. So North Carolina law says may means shall? Exactly, Your Honor, yes. And when shall appears over and over and over again in the same document, that's what North Carolina tells us in interpreting contracts, not interpreting statutes, in interpreting contracts. I believe it does, Your Honor, and let me tell you why. It's because the North Carolina, in interpreting contracts, North Carolina looks to the intent of the parties. That is, as the King case in North Carolina says, that is the polar star, that is the sine qua non of what we're trying to determine is what was the party's intent. But doesn't it only look to the intent when the language is ambiguous and can be interpreted different ways? I think it would look to the intent irrespective. That's what North Carolina law, the Supreme Court case, again, the King v. Davis case says in all cases we're trying to determine intent. We certainly would look at the language of the parties, and if the language is ambiguous, maybe that tells us what the party's intent is. But I think the intent is broader, and here may is ambiguous. The reason is if you look at the full construction of a contract, North Carolina says you can look at the dictionary definitions, you can look at all the languages in the contract. You should look at whether one interpretation. Well, and if we look at all of the language in the contract, there's places in the contract where it says shall, shall, shall, shall, and here it says may. Correct. Yes, Your Honor. And so let me address that. So just to finish with respect to that first thought, the dictionary definition says may mean shall. This court has held that may mean shall. And just to provide the court the site for that, it is United Hospital Center v. Richardson. There the court construed, it was construing a statute, but it said we need to look to the intent to determine whether may mean shall. And in that case they ultimately held that the word may does mean shall. To answer Your Honor's question, yes, there are two different uses in there. In one place the contract, the judges, the court judge's order says shall. In the other place it says may. Here's why that may be. And we don't know. Unfortunately the judge is retired, so we don't exactly know. The judge was trying to enter an order, a drow, that would take effect many years down the road, a decade down the road. In this case David actually was lucky because he was able to go ahead and receive his benefit early because of some corporate issues that went on with DuPont. But the judge had to make a decision and decide what to put in there. In the administrative record it's very clear that the company was paying or could pay part of the cost of the QJSA. That's what we're arguing about, the QJSA cost and who would end up being responsible for those. The company paid for part of those. So it makes sense that the judge would have said, the company may end up covering this cost. If so, fantastic. Then neither party has to bear it. So the alternate payee may have that cost, maybe she wouldn't, because the company may end up covering the full amount of that. The company is covering part of that, and that's clear from the administrative record here. The other interpretive methodologies that the North Cona Court would use would also look to ERISA and say, if you allow may, here's the problem. That makes it totally at the unfettered discretion of the plan administrator. That's illegal under ERISA because the plan administrator, as the appellees have admitted in their brief, the word may in there, interpreting it as permissive, says they could put some, none, or all of the cost on the appellee and opposite on David, the appellant. That isn't allowed because ERISA says you have to put in the quadro exactly what the determination is, how much is each party going to get, or some type of ability to calculate that. You can't calculate that when it's at the unfettered whim of the plan administrator. So, yes, it's a bit awkward, but because of those additional qualities, the judge may be wanting to control for, perhaps the plan administrator is going to pick that up. But construing it as permissive violates ERISA, violates the fact that it also doesn't say the participant's benefit may be reduced. It only just says the alternate payee's benefit may be reduced. So it violates every other canon of North Carolina law construction. The only way to construe it consistently in North Carolina law is to construe it as that it puts the burden of the QJSA, the cost of the QJSA, onto the alternate payee. At worst, Your Honor, we believe that this court, and we're respectfully requesting this court grant summary judgment or reverse the summary judgment to the plan administrator, grant summary judgment in favor of David with that holding. At worst, though, Your Honor, we would say that under North Carolina law, if you apply these rules and it still has some ambiguity to it, then that should be a trial. So we would say that at that point the court would have to sit as trier of fact and to make a determination as to what the parties met. I briefly want to touch on the third argument, which is one question. So if we were to agree with you on your interpretation of the phrase, the may phrase versus the shall, wouldn't we need to determine or wouldn't at some point someone would need to determine if the quadro conflicts with the plan, right? The plan administrator has already done that. The plan administrator has already stamped the seal of approval and said this does not conflict with the plan. And they haven't pointed to anything in the plan, Your Honor, that conflicts with it. There's nothing in the plan that they've cited that shows that there's any conflict. And, in fact, we quoted the legislative history of the Retirement Equity Act, which was where these quadros came in. It says the plan or the alternate payee or the participant can have that. But doesn't the plan administrator say that that was part of the determination that may was permissive was because of the interpretation, because of this conflict with the plan? But the plan administrator then is, again, that kind of gets back to my original point, the plan administrator then is rewriting the quadro. If the plan administrator thought there was a problem, then the correct thing to do was to stamp no and say this is not a quadro, you conflict with the plan. But the plan administrator has not cited anything. They've cited an SPD, some examples in an SPD. The SPD is not the plan. The plan is what gets enforced under 502 and under the Supreme Court's authority in Cigna versus Amara. All the examples they cited, too, are all married participants. They're not divorced participants. And I'd be happy to finish up if there's any additional questions, but I see my time is up. Thank you. And you have five minutes reserved, so we'll. Thank you. Thank you. And it's Mr. Wasn't It? Yes, Your Honor. All right, thank you. Thank you. I'm Todd Wasniak with Holland and I. We represent the defendant's appellants, or two deputies in this case. This is a pretty straightforward benefits claim. The quadro, or the DRO in this case, was qualified as a quadro based upon the plan administrator's interpretation of the DRO and its understanding that may is permissive. My colleague would have you come to the conclusion that somehow the plan administrator rewrote the order. There's no rewriting of the order. There was an ordinary reading of the order and an application of that order to the plan and the plan's terms. Nothing unusual about this. At the district court level, the defendants did argue for an abuse of discretion standard for all of the determinations involved with the DRO and qualifying it as a quadro. The district court did not apply an abuse of discretion standard across the board. Instead, it applied a de novo standard for the quadro and then applied an abuse of discretion standard for any plan interpretation or eligibility determinations, which is what my colleague is arguing for. The district court already did that. The district court also analyzed the decision making, the entire decision making under both an abuse of discretion and a de novo review standard and came to the conclusion that the plan administrator's decisions were reasonable under either standard. Our position is there's no reason to send this back. There's no reason to remand this. The district court has already done the work. I disagree strongly with my colleague's arguments about the interpretation of this order. As the court pointed out, the order throughout uses the word shall when the family court wanted to make something mandatory. It knew how to use the word shall. It knew how to use the word must, mandatory. That's not what this provision says. The provision says may, and that is discretionary. And contrary to what my colleague is arguing, that does not make it illegal under ERISA. The plan has formulas for determining how a QJSA is going to be And the plan administrator explained that methodology to the plaintiff here on multiple occasions. Nothing unusual about that, and it doesn't have to be an exact number. It's a formula that's required by ERISA. How are you going to calculate this? And the plan provides for survivor benefits, which would include the QJSA, of 50% or 75%, and then it talks about how to calculate that. And, yes, some of the examples involve married people, but it doesn't change the calculation. The plan and the SPD explain how the calculation is made. And, again, I will concede that the plan document is the controlling document, but the SPD is the plan administrator's interpretation of that plan document. And so the plan administrator, through the SPD, is putting out its understanding and its interpretation of the plan document and how these calculations are going to be made. So this is the common-sense layperson's way of understanding what does the plan say about these types of benefits. So you disagree that if the quadro permits some level of discretion to the plan administrator, it's void or unlawful because it conflicts with ERISA. You disagree with that fundamental proposition? Wholeheartedly, yes. And, as the court pointed out, the opposite is actually the case, that in this case the plaintiff's interpretation would actually cause a violation of the plan terms. And ERISA does not allow a DRO to require forms of benefits that are not provided under the plan. And that's what the plaintiff here is arguing for, is a form of benefit that's not allowed. Why would that benefit not be allowed? Because the quadro rules specify that a DRO cannot order a form of benefit that the plan does not already provide for. And so in this particular case, if the so-called cost of this benefit, and there's really not a cost, there's an actuarial adjustment to address the fact that this benefit, this lifetime annuity benefit, is no longer going to be paid over the life of one person, but over the lives of two persons. And so there's an actuarial adjustment to account for that. And that's what everyone's been referring to as the cost. So if it's not a cost and it's simply an actuarial adjustment, why do we even need to reach this paragraph 13 language at all? Can't we simply find that the actuarial adjustment was properly conducted and there were no costs? I believe, Your Honor, that the answer is yes. Because the court, the family court who entered the DRO, knew very well that it was ordering a QJSA as part of the marital separation of property. And the family court presumptively knew exactly what that meant in terms of we're going to split the benefit up, part going to the husband, part going to the spouse, and there's an actuarial adjustment that's going to have to be used to calculate that amount. And throughout this DRO, the family court says over and over and over again that the court's awarding survivor benefits in the form of a QJSA. So, yeah, I mean, my view of this order is it's crystal clear. The family court ordered a marital separation of property, ordered a QJSA, and then said if there were some costs associated with that. And there can be costs associated with it. For example, if the plan goes and buys an annuity, there's a cost typically associated with that. You're paying an insurance company some fees in order to issue the annuity. Here there was really no costs. As I said, the so-called cost that the plaintiff was referring to was really just the actuarial adjustment, to adjust from a single-life annuity to basically a joint-life annuity. So, but there is, if we were to, considering opposing counsel's argument, if we were to consider North Carolina law, since we're looking at contract, this notion of looking at the intent of the parties. I mean, it does seem somewhat, I mean, there is some intent that the QJSA in these negotiations with Mr. Gasper, and I guess his ex-wife, was that she was supposed to pay the difference in the cost of the annuity. Well, that's Mr. Gasper's very self-serving statement, that that's what the party's intentions were. That may have been his intention. We don't know. He wasn't deposed. But the wife didn't provide any testimony, and the family court didn't provide any testimony. What's in the record is that Mr. Gasper's attorney teed up a proposed DRO. The ex-wife's attorney teed up a proposed DRO. According to the record, the family court chose the ex-wife's version of the DRO and then made changes. And we don't know exactly what the changes were. So I would argue it's not the intention of Mr. Gasper that makes any difference here. He can have whatever intention he wanted. It's the intention of the court, the family court, in agreeing to the final agreement and making whatever modifications the family court made and then entering the order. So from my perspective, the way to interpret this is to look at the plain language. In North Carolina law, just like most states, it says that you try to define the intention of the parties from the words they actually used. You look at the contract. And in this case, the contract is pretty unambiguous. It says may. It doesn't say must. It doesn't say shall. We know the family court knew how to use mandatory words like shall because it used it throughout the DRO. And it didn't choose to use that type of word series. It said may. I would argue the district court should have applied an abusive discretion standard throughout. When a plan administrator is receiving a DRO, and attempting to qualify that, it has to read the DRO. It has to come to an understanding of what is being ordered here and then making a decision that, based upon that interpretation, is it qualified or not. But doesn't the case law say that the quadro needs to be reviewed de novo or interpreted? There's nothing in the Fourth Circuit that says that. There has been some out-of-circuit cases cited by the plaintiff for that proposition. Is there any case in any other circuit that goes along with your interpretation or your argument? Well, the court asked about the Fox v. Fox case. And although the court there, the Fourth Circuit there, did not explicitly say, we're going to apply an abusive discretion standard review through the whole process, it certainly is implicit in the court's order there. And the court held that the application of the DRO in that case to the terms of the plan were, in fact, subject to an abusive discretion standard review. Now, the panel there did not make crystal clear, are we applying it to just the interpretation of the plan, are we applying it to the interpretation of the quadro, or both? But certainly implicitly, the abusive discretion standard was applied to both. That, I think, is probably the closest that we found on that issue, particularly in the Fourth Circuit. If we were to agree with you, though, we would be creating a circuit split, would we not? The circuit courts that are relied upon by the plaintiff involve where the sole issue is the interpretation of the quadro. And that's not what we have here, it's not a sole issue involving the interpretation of the quadro. The quadro still has to be applied to the plan, and the benefit still has to be determined. And so there is kind of this mixed construction, if you will, of both the quadro itself, but also then how does that apply to the plan in terms of the plan options for optional forms of benefits, and then how does that get calculated. So, in my mind... Do we have to agree with you in order for you to win? No, you can just agree with the district court. The district court clearly said that it was reviewing the quadro under a de novo review standard, and applied that de novo review standard, and determined that the quadro was unambiguous, and that may means may, and not must. And I think you can just simply affirm that ruling. Now... There was an issue that was raised by my colleague about the affidavit or declaration by Mr. Gasper, and whether it should have been considered. The 502A1B claim, the claim for benefits, the standard in this circuit clearly is, if it's not in the administrative record, you don't consider the evidence unless there's some extraordinary circumstance. He's presented no evidence of an extraordinary circumstance. As to the 502C claim, which is a claim for statutory penalties for alleged failure to timely provide plan documents, the district court has discretion to award penalties or not award penalties. And the district court here found that the plan administrator, if not fully complied, certainly largely complied with the request for documents. And one of the biggest issues that Mr. Gasper presented was, he said, I wanted the 2008 summary plan description, including various summaries of material modification, which are basically just amendments to the SPD. And in this case, the record evidence shows that he was provided the 2013 SPD, which is the SPD that the plan administrator determined was applicable. And the 2013 SPD includes everything in the 2008 SPD and all of the SMMs. So this argument that there were some documents that he didn't receive is really not true. He received the operative summary plan description, and he was told that this has the language that would have applied, including all of the SMMs. And so, as the district court found, he received virtually all of the documents he asked for. Now, he claims that there were a couple pages of missing from an appendix to the plan. We don't know for a fact that's true or not true. We've just kind of taken that as true. And of course, as soon as he brought that to our attention, he was provided another copy with the appendices intact. But what the district court found was that none of this prejudiced Mr. Gasper because he completed his appeals process. He filed his second-level appeal prior to ever asking for the plan documents in writing. And prior to asking for the plan documents in writing, the plan has no obligation to provide him anything. In this case, though, they did. On moral request, the plan administrator, in fact, sent him plan documents and sent him the SPDs and sent him everything else that they thought was responsive. So, in this case, the district court exercised its discretion and said, that's substantial compliance. I'm not going to impose a penalty. And there's nothing in the record to suggest the district court abused its discretion in that regard. The last claim is an attorney's fees claim. That really rises or fall on the merits of the other claims. And so, I'll leave that issue alone. It's going to obviously depend upon how the court rules on the primary claims in terms of the benefits claim and the 502c claim. I would make one other point. In the appellate brief, there's a number of statements where Mr. Gasper asserts that the plan administrator abused its discretion and actually breached its fiduciary duties. There was a fiduciary duty claim in this case. It was dismissed on a motion for judgment on the pleadings. And that decision has not been appealed. So, any alleged breach of fiduciary duty is really off the table. That's already been dismissed and eliminated. Do you have any questions for me? All right. Thank you. Thank you. Yes, sir. Mr. Tyson. Yes. I wanted to rebut a few of the statements made by my colleague. First, they did rewrite the quadro or the dro. There's no question about that because in the determination report, they said, well, we're going to rewrite this for you. We're going to say it's the total monthly benefit. Not the alternate pays benefit. We're going to rewrite it and write the total monthly benefit shall be reduced. Total monthly benefit isn't defined anywhere in the plan, anywhere in the SPD. Then they came back and said when David appealed that and said, hey, I think you guys got this wrong. They came back then and said, well, we qualified the quadro, but what we did is we just ignored that language in there. Again, you don't get to rewrite a state court judge's order. You don't get to decide that it's different language or ignore it. It's either a quadro or it isn't. Then they came back a third time and said, now we're going to interpret it and say it's permissive. They've had three different ways that they're trying to come up with a way to get where they want to, but they absolutely did rewrite the state court judge's order. They did not just interpret that. The second, does it make it illegal? I think your honors had asked, does it make it illegal if it's permissive? Absolutely it does because then, again, the plan administrator can say, I'm going to impose all the costs on David. He gets what he currently has. If they said, well, it's permissive, so I'm going to choose to impose none of the costs on David, he's going to get a different amount then. That's going to vary that quadro, and it's willy-nilly at how much they determine. There's no standard for what the plan administrator would be able to do. They can choose whatever they want. That is not a valid quadro because it does not have a formula or a set standard as to who's going to get what, totally at their whim. Then the other point I wanted to make with respect to that, as far as violating any plan provision, again, they have yet to cite a plan provision that is being violated. There's nothing in the briefs, also in the administrative process that my client went through by himself. They're supposed to give him when they send him a letter and say, hey, we're denying your claim. As one of the ERISA claims regulations requirements, they have to say, here's why we're denying it. Here's the plan provision on which I'm relying. Nothing in there, nothing. So if they're going to cite a plan provision, they need to tell him what it is. I thought he said that the plan did not allow for the alternate payee, the structure that you were. There's nothing in the plan that doesn't say the alternate payee can't pay this. ERISA law allows that to happen. How can something be violated when ERISA allows that and the plan doesn't contain that? The only thing they've cited is that 2008 SPD that has examples of a married participant. Here's why that doesn't really help them. A married participant, you've only got one payment coming out. There's only one payment when somebody's married. And so the QJSA has to come out of that one payment. There's no other place for it to come from. On the other hand, with David or with a divorced participant, you have the participant and then you've got the alternate payee. There's two streams of payments that are coming out, so it would make sense that it could come out of either one of those. Nothing in the plan, nothing in the SPD prevents that in a divorced participant case. They've cited nothing. They need to cite something if they're saying it's actually violative. And if it is violative, how do they possibly qualify it? You can't do that. That's just, that isn't possible. So the plan administrator, if they thought that it was violative, they should have stamped no, this is not a quadro, go back and fix it. And that's the problem. If they had let David fix it, if they had said this isn't a quadro, we think it's a problem, then he could have gone back, they could have redone the divorce, but he relied on this. He thought, okay, great, you're going to pay for it, therefore I'm going to take these other positions in my divorce as far as, you know, anything else, any other types of equitable distribution issues. Well, counsel, let me ask you something that's confusing me a little bit. Is actuarial adjustment a cost? What is your position on that? Absolutely. Thank you. I'm glad you asked me that. I didn't want to turn to that. Yes, it is a cost. The district court cited the plan summary, did it not? I believe it did. Regarding the cost of the annuity? Yes. Here's why it is, though. Here is the quadro guidelines that they give out to people and say, here's some general information that may help you draft your quadro. Here's what they say at JA530. Here's what the plan administrator says. The accrued benefit may be reduced as necessary to cover the cost of the QJSA awarded to the alternate payee. The plan administrator itself is calling this the cost. And I will also cite to your honors, JA560, the correspondence. They specifically reference cost, JA188, the determination report of the participant's benefit commencement date, the total monthly benefit, will be reduced to cover the cost. They label it as the cost. Those are one and the same. We would respectfully request that your honor reverse the summary judgment grant and remand this to the district court for further proceedings consistent with our arguments. Thank you, your honors. Thank you. We will step down and we will take a short break. We will stay right after we step down and greet counsel.
judges: DeAndrea Gist Benjamin, Nicole G. Berner, Barbara Milano Keenan